M. W. Parsons, Imports and Plymouth Organic Laboratories, Inc. v. Commissioner.
M. W. Parsons, Imports & Plymouth Organic Labs. v. Commissioner
Docket No. 3068.
United States Tax Court
1945 Tax Ct. Memo LEXIS 359; 4 T.C.M. (CCH) 8; T.C.M. (RIA) 45003; January 3, 1945
Joseph J. Klein, Esq., 60 E. 42nd St., New York, N. Y., for the petitioner. J. Richard Riggles, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in income tax, declared value excess profits tax, and excess profits tax for the year 1941 in the amounts of $3,345.59, $377.83 and $8,829.98, respectively. Not all of the adjustments are in dispute and petitioner claims an overpayment. The claim of overpayment arises from the fact that, at the hearing, petitioner was granted leave to file an amendment to the petition, which amendment alleged that error was committed by respondent in the determination of the deficiencies for the taxable year due to respondent's failure *360 to allow petitioner a deduction in the sum of $2,000 which was paid or incurred by petitioner as additional compensation to its foreman for services rendered to petitioner during the taxable year. Respondent in his answer to the amendment to the petition admitted the allegation of error and all the allegations of fact in support thereof, except the allegation relating to the payment of the taxes for the taxable year. At the hearing, petitioner introduced proof of such payments. The only question remaining is whether respondent erred in disallowing $20,000 of the $43,351.34 deduction which petitioner claims as reasonable compensation for its president, Herbert Bye. Petitioner filed its returns for the taxable year with the collector for the second district of New York. Findings of Fact The petitioner is a New York corporation with its principal office in New York City. It kept its books and filed its returns on the accrual basis. Its business, during the taxable year, consisted of manufacturing and selling chemicals, metallic soaps or stearates, oils, waxes, lanolin and similar products; exporting and importing chemicals; and acting as a commission merchant. The petitioner was *361 incorporated on January 10, 1930, to take over the business of Mathias W. Parsons, who had recently died. Some time prior to his death, Parsons, who had conducted the business as a sole proprietorship, had decided to liquidate the business by May 1930, but he died before that date. The reasons for his decision to liquidate were that he was of advanced age and the business had been rapidly declining. Prior to his death, his wife, Emelyn Parsons, kept the books of the business, drew all the checks, passed on the credits, and was familar with most phases of the business. Parsons often spoke of his wife about the ability of Herbert Bye and indicated to her that Bye would be a great asset to the business. After Parsons' death, in the latter part of 1929 or the early part of 1930, his widow suggested to Bye the possibility that Bye enter the business. At that time, Bye was general manager and vice-president of an oil and chemical company, and his annual compensation was approximately $10,000. He desired, however, to become part owner of a business and thus realize more directly the fruits of his labor. In his discussions with Mrs. Parsons, Bye proposed that he be paid $12,000 annually, *362 and that he be given an interest in the business. After negotiations, it was agreed that the business would be incorporated; that its capital would be $50,000, and its stock would consist of 500 shares $100of par value per share; that Mrs. Parsons would receive 400 shares for the net assets of her husband's business; and that 50 shares would be issued to Bye for $5,000 cash, and 50 shares would be issued to Mrs. Parson's nephew, F. W. Norton, for $5,000 cash. It was also agreed that Bye would receive a fixed annual salary of $6,000 plus one-half of the corporation's annual profits after the payment of all expenses, salaries and taxes. At the first meeting of petitioner's board of directors, held on February 17, 1930, the following resolution was adopted: "RESOLVED that Herbert Bye be employed as general manager of the corporation for the term of five (5) years from the 10th day of February, 1930, at a salary of Six Thousand ($6,000) Dollars per annum in twelve (12) equal installments payable on the 10th day of each and every month, plus fifty per cent (50%) of the net profits of the corporation in excess of Five Thousand ($5,000) Dollars for the period ending on the 31st day of *363 December, 1930, and fifty per cent (50%) of the net profits in excess of Five Thousand ($5,000) Dollars for the years ending on the 31st days of December in 1931, 1932, 1933 and 1934, respectively, the said profits to be determined by deducting from the earnings of the corporation all expenses of any and every nature, including the salary paid to said Herbert Bye in accordance with the preceding provision hereof, and to be paid on or before the 15th day of March of the year following the year in which such profits are made. "AND FURTHER RESOLVED that, subject to the approval of counsel for this corporation as to its terms and conditions, the proper officers of this corporation be authorized and directed to enter into a contract with said Herbert Bye in pursuance hereof." Thereafter, on February 17, 1930, petitioner and Bye entered into a written agreement, under the terms of which, Bye agreed to enter the employ of petitioner for a term of five years from the 10th day of February, 1930, as general manager, and petitioner agreed to pay him for such services, compensation computed as follows: "FOURTH: That the first party shall pay to the second party for his services as aforesaid *364 the sum of SIX THOUSAND ($6,000) DOLLARS per annum in twelve equal installments on the 10th day of each and every month beginning the 10th day of March, 1930, plus fifty per cent (50%) of the net profits of the corporation in excess of five thousand ($5,000) dollars earned during the period beginning the 11th day of January, 1930, and ending the 31st day of December, 1930, and fifty per cent (50%) of the net profits in excess of five thousand ($5,000) dollars for the years ending on the 31st days of December in 1931, 1932, 1933 and 1934, respectively, such shares of the profits to be paid to the second party on or before the 15th day of March of the year following the period or year in which such profits are made. "FIFTH: That the net profits of the said business for the periods or years above mentioned shall be determined by deducting from the earnings of the first party all expenses of any and every nature, together with the salary paid to the second party and all salaries paid to the employees and officers of the first party. "SIXTH: That the determination of the amount of such net profits as made by the first party, as well as the apportionment thereof, shall be final, conclusive *365 and binding upon the second party." Bye's compensation under his contract with petitioner has annually been computed by a certified public accountant under the terms of a letter to such certified public accountant, dated January 30, 1931, signed by Mrs. Parsons and Bye, which reads as follows: "The following will give you the basis for arriving at the division of the net profits of this company provided such net profits are in excess of $5000.00. "Net profit is equal to twice Mr. Bye's proportion, plus $5000.00 for preferred dividend on capital stock, plus taxes. "As Mr. Bye's proportion of the profit is compensation, corporation tax is only payable on such net profit as is available after his proportion has been reserved. It is understood however, that his share is arrived at after the amount of taxes has been ascertained." The employment agreement between petitioner and Bye expired on February 10, 1935. Thereafter, Bye continued in the employ of the petitioner and his compensation for all of the years from 1935 to the date of the hearing has been determined in accordance with the formula set forth in the original written agreement as amplified by the letter to the certified *366 public accountant. During all of these years, Bye continued to render personal services to petitioner under the terms and conditions set forth in the original written agreement. Although the original agreement was not renewed in writing, both Bye and petitioner were satisfied with its terms and they considered that such contract was annually renewed throughout all the years from 1935 to 1944, inclusive. In 1941, petitioner's attorney died and a new attorney was engaged. At a special meeting of petitioner's board of directors held on December 6, 1941, the new attorney, who was also a director, stated "that in going over the minutes, he had noted the resolution of February 17, 1930 with reference to Mr. Bye's salary for a five-year period, that he understood that the same arrangement, with certain oral understandings as to practical construction of the resolution had been continued to this date, and that he believed it would be better policy to record by formal resolutions the agreement and the understanding which exist." Therefore, the following resolution was passed: "RESOLVED that Herbert Bye be continued in the employ of the corporation as its general manager at a salary of $6,000 *367 per annum payable in twelve annual installments, plus 50% of the net profits of the corporation in excess of $5,000 for the period ending on the 31st day of December in each and every year, unless Herbert Bye shall sever his connection during the year, in which case, the net profits shall be computed to the end of the last full month preceding the date at which he so severs his connection; that in a determination of said profits there shall be deducted from the earnings of the corporation all expenses of any and every nature, including the salary paid to said Herbert Bye in accordance with the preceding provisions hereof and all income, excess profits and other taxes payable by said corporation, and that the salary payable to Mr. Bye based upon the net profits shall become due and payable to him on the 31st day of December in each year and that the same shall be paid in any event on or before the 15th day of the succeeding month of March." Petitioner used the same method of determining Bye's compensation for the taxable year as it did for each of the preceding years since its incorporation. The amount of $43,351.34 paid to Bye as compensation for services rendered in the taxable *368 year were claimed by petitioner as deductions in its Federal returns for the taxable year and the amounts paid to him as compensation for services in each of the preceding years were similarly claimed by petitioner as deductions in its Federal returns for those years. The following table shows the amount of sales by petitioner for each year, the cost of such sales, the gross profit, the income taxes paid, the amount of Bye's compensation for each year, the amount available for distribution to stockholders, the dividends paid, the surplus at the end of each year, and various percentages. 1930
1931
1932
1933
Sales
$261,903.75
$317,353.99
$415,429.78
$390,359.95
Cost of Sales
226,215.00
266,451.80
354,354.02
340,957.97
Gross Profit
35,688.75
50,902.19
61,075.76
49,401.98
Bye's Compensation
7,967.40
14,597.82
16,062.63
9,057.01
Income Taxes Paid
631.92
1,445.16
2,446.78
1,348.46
Other Officers' Salaries
2,790.00
3,640.00
2,950.00
5,000.00
Other Expenses
19,421.32
22,783.54
35,097.71
32,115.58
Amount Available for Distribution
7,634.08
13,597.82
15,017.11
7,947.52
Dividends Paid
2,500.00
10,134.08
13,597.82
15,335.43
Surplus at Close of Year
5,134.08
8,597.82
10,017.11
2,947.52
Dividends on Par Value of Capital Stock
Issued and Outstanding
5%
20%
26%
30%
Percentage of Cost of Sales to Sales
86.4%
84%
85.3%
87.4%
Percentage of Bye's Compensation to Sales
3%
4.6%
3.9%
2.3%
1934
1935
1936
1937
Sales
$326,049.16
$342,001.87
$407,682.74
$449,356.35
Cost of Sales
286,370.94
300,946.13
352,365.96
394,604.96
Gross Profit
39,678.22
41,055.74
55,316.78
54,751.39
Bye's Compensation
8,906.42
9,785.15
14,982.57
13,549.02
Income Taxes paid
1,260.44
1,400.55
1,675.56
1,483.59
Other Officers' Salaries
None
None
None
None
Other Expenses
29,114.15
30,181.55
34,002.20
33,957.96
Amount Available for Distribution
7,906.42
8,785.24
13,982.57
12,549.02
Dividends Paid
5,442.52
7,906.42
17,285.24
12,000.00
Surplus at Close of Year
5,406.42
6,285.24
2,982.57
3,531.59
Dividends on Par Value of Capital Stock
Issued and Outstanding
10%
15%
34%
24%
Percentage of Cost of Sales to Sales
87.9%
88%
86.5%
87.8%
Percentage of Bye's Compensation to Sales
2.7%
2.9%
3.7%
3%
1938
1939
1940
1941
Sales
$384,229.10
$502,411.91
$471,974.05
$871,044.01
Cost of Sales
329,586.42
421,745.34
395,615.23
699,976.72
Gross Profit
54,642.68
80,666.57
76,358.82
171,067.29
Bye's Compensation
12,537.21
22,933.92
20,287.71
43,351.34
Income Taxes Paid
1,846.73
3,740.96
3,793.72
38,838.57
Other Officers' Salaries
None
None
None
None
Other Expenses
34,665.60
37,514.81
39,945.22
56,714.00
Amount Available for Distribution
11,537.20
21,933.93
19,287.70
42,351.32
Dividends Paid
8,500.00
11,500.00
22,000.00
29,000.00
Surplus at Close of Year
6,568.79
17,002.72
14,290.42
27,804.30
Dividends on Par Value of Capital Stock
Issued and Outstanding
17%
23%
44%
58%
Percentage of Cost of Sales to Sales
85.8%
83.9%
83.9%
80.4%
Percentage of Bye's Compensation to Sales
3.3%
4.6%
4.3%
4.9%
*369 Petitioner's successful operations from the time of its incorporation are attributable directly to Bye's efforts and ability. Although he was not a graduate chemist and his formal education did not extend beyond high school, he was experienced in the technical operation of the laboratory, having been in the employ of various chemical companies since he was 16 years of age. In the taxable year, he was the only executive employed by the petitioner, was in complete charge of the business and devoted his entire time and ability to the business. He was responsible for the finances of the company; he did all the purchasing which amounted to more than $700,000; he was in charge of sales; and he formulated the general policies of the company. He decided upon the chemicals to be manufactured and personally handled the principal accounts. Between $500,000 and $600,000 of petitioner's total sales of $871,000 for the taxable year were obtained by him. The sales produced by Bye were in chemical specialties which were more profitable to petitioner than its general chemical sales. In addition Bye selected distributors throughout the country to act as agents in the sale of the company's products *370 and visited them at various times. He also directed the work of the laboratory where experiments were made to develop new products. Because of his long experience, he was able to help customers in their technical problems and to suggest substitutes for those chemicals which were unavailable due to the war. During the taxable year, petitioner had approximately 750 customers and of this number, about 30 customers each made purchases which exceeded $20,000. From 40 percent to 45 percent of petitioner's total gross sales in the taxable year were made to 10 customers. Petitioner's principal customer was Pond's Extract Company and the sales to that company in the taxable year approximated $150,000. These customers, including Pond's, gave their business to petitioner because of Bye. The number of petitioner's customers was about the same in 1940 as in the taxable year. During the taxable year, there was some advanced buying on the part of petitioner's customers due to the war, and the prices of petitioner's products had increased between 10 percent and 15 percent. In addition to Bye, petitioner had about 17 or 18 employees, one of whom was a salesman and one a chemist. Petitioner's officers *371 throughout the taxable year consisted of Herbert Bye, president; Emelyn Parsons Severy, formerly Mrs. Parsons, treasurer and vice-president; Edwin C. Gould, secretary; and Helen Dorchak, assistant treasurer. The directors were Bye, Mrs. Severy and Mr. Gould. During the taxable year, petitioner had 500 shares of capital stock outstanding, of which Bye owned 251 shares and Mrs. Severy owned 249 shares. The ownership of petitioner's capital stock since its incorporation was as follows: From
To
Bye
Mrs. Parsons
Norton
Total
February 17, 1930
March 2, 1931
50
400
50
500
March 2, 1931
March 15, 1932
75
375
50
500
March 15, 1932
January 12, 1933
125
325
50
500
January 12, 1933
May 3, 1933
125
375
died
500
May 3, 1933
May 1, 1934
175
325
500
May 1, 1934
April 24, 1935
200
300
500
April 24, 1935
April 24, 1936
225
275
500
April 24, 1936
date
251
249
500
Competitive organizations selling products similar to those dealt in by petitioner pay salesmen a commission of 5 percent on the sale of ordinary chemicals and 15 percent to 20 percent on the sale of chemical specialties. The sales attributable to Bye were *372 largely specialties. Petitioner's business depended exclusively upon the knowledge, experience, ability, reputation, and energy of Bye. The sum of $43,351.34 paid by petitioner to Bye in the taxable year as compensation for personal services rendered by him to it during the taxable year was a reasonable allowance for compensation for such services. During the taxable year, petitioner incurred liability in the amount of $2,000 as additional compensation to its foreman for personal services rendered by him. This amount was paid by petitioner during 1942 and was claimed as a deduction on its return for 1942. Respondent disallowed the deduction on the ground that the expense was deductible in the taxable year. Subsequently, a deficiency was assessed against petitioner for 1942 which has been paid. The said amount of $2,000 is deductible from petitioner's gross income for the taxable year. The petition herein was filed on October 2, 1943. Petitioner's taxes for the taxable year have been paid by it as follows: March, 1942
$9,727.91
June, 1942
9,727.91
September, 1942
9,727.91
December, 1942
9,727.90
May, 1943
3,665.80
Opinion In computing net income, section 23 (a) (1) of the Internal Revenue Code *373 permits the deduction of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. Under this statutory authority, petitioner in its returns for the taxable year, claimed a deduction of $43,351.34 for compensation paid to Bye, its president and general manager. Respondent determined that the amount of $23,351.34 represented reasonable compensation to Bye, and disallowed the balance of $20,000. The deficiency is based on this disallowance. On brief, respondent points out that Bye owned a majority of petitioner's stock in the taxable year and he intimates that part of the alleged compensation paid to Bye was a distribution of corporate earnings. He also argues that the substantial increase in petitioner's business during the taxable year was not attributable to Bye's efforts but was the result of war conditions. There is no fixed yardstick by which the question of the reasonableness of a corporate officer's compensation can be determined. Each case must stand upon its own facts. In determining whether a particular *374 compensation payment is reasonable, the situation must be considered as a whole. Among the factors which properly may be considered in determining the reasonableness of the particular compensation is the salaries paid to employees performing similar services in comparable enterprises; the nature of the contract between the employer and the employee and the date when such contract was entered into; the employee's qualifications and his contribution to the business; the nature, extent and scope of the employee's work; the volume of business handled by the employer and the profits made; the number and personnel of the stockholders; and the dividend policy of the employer. Measured by these tests, we think the record amply demonstrates that the compensation paid to Bye in the taxable year was reasonable and we have so found as a fact. The record is replete with testimony that for all practical purposes, Bye was the corporation. He devoted all his time, energy and ability to the corporation, and it prospered as a result of his efforts. The great bulk of the sales made by petitioner during the taxable year were made because of Bye's reputation, technical knowledge, and business ability *375 in the chemical field. From the time Bye entered petitioner's employ, he converted a failing business into a substantial and flourishing one. Between 1930 and 1941, petitioner's gross sales increased from $261,000 to $871,000, and its gross profits increased from $35,000 to $171,000. The amounts available for distribution to stockholders, after deducting taxes and total compensation paid to Bye, increased from $7,600 to $42,000. The total sales for the taxable year were almost double those of the prior year and the gross profit for the taxable year was more than double that of the prior year. Mrs. Severy, who owned approximately 49 percent of petitioner's stock testified that if petitioner lost Bye's services it would be necessary to liquidate the business. Some of Bye's duties and responsibilities during the taxable year, were the development of chemical specialties, and substitutes for chemicals which were unavailable due to the war, the purchasing of all materials, the supervision of manufacturing, the planning of sales, and the formulation of the general policy of the company. Petitioner's business was particularly unique in that it was a small company competing with much larger *376 ones, such as divisions of the various Standard Oil Companies. That it was able to meet such competition so successfully was due solely to Bye's efforts. Cf. William S. Gray & Co. v. United States, 35 Fed. (2d) 968; Heywood Boot & Shoe Co. v. Commissioner, 76 Fed. (2d) 586; J. D. Van Hooser & Co. v. Glenn, 50 Fed. Supp. 279. One of petitioner's witnesses at the hearing was the publisher of two of the leading trade publications in petitioner's industry. He knew the operations of most of the companies in that industry and was familiar with the salaries paid by competing companies to their executives. As part of the service of his publications, he was instrumental in securing employment for many executives in the chemical supply industry. He testified that during the taxable year he secured employment in the industry for at least 300 people. He expressed a first opinion that under the circumstances of petitioner's business and his own knowledge of the compensation paid to executives of other companies in petitioner's industry, the total amount of compensation paid by petitioner to Bye in the taxable year was low. He also testified that salaries *377 in the industry had gone up in 1941 because personnel was harder to secure. The respondent offered no evidence in opposition. We do not think it necessary to stress the fact that petitioner's method of computing Bye's compensation for the taxable year and for the prior years was pursuant to an arm's length transaction. Respondent's regulations provide that "if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid." Regulations 103, section 19.23 (a)-6. Of course, this provision is subject to the condition that the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. However, for the reasons heretofore set forth, we have found that the compensation paid to Bye in the taxable year was reasonable. It might also be pointed out that on the basis *378 of commissions customarily paid to salesmen in the industry in which petitioner was engaged, Bye, on the sales producedd by him, would have received greater compensation than was actually paid to him by petitioner. Respondent's argument that the compensation was not solely for personal services rendered and his intimation that it consisted in part of a distribution of earnings is untenable. The compensation paid was pursuant to a contract made in 1930, at which time Bye only owned 10 percent of petitioner's outstanding shares. The increase in his stockholdings in the subsequent years did not affect the amount of compensation, which was computed under the formula agreed upon in 1931. That method of computation has been consistently used since that date. Mrs. Severy, who owned 49 percent of the stock, did not receive any compensation for personal services in the taxable year nor in any prior year except 1933. She was also aware that any increase in compensation to Bye would decrease the amount which she might receive as dividends on her stock. Petitioner's dividend-paying policy has been exceedingly liberal. It has paid a dividend in each year since its incorporation, ranging from *379 5 percent in 1930 to 58 percent in the taxable year. Its average annual dividend payment was over 25 percent. This is not a case where a large stockholder is attempting to take out dividends in the guise of compensation. Respondent's argument that the increase in petitioner's business during the taxable year was solely attributable to war conditions is equally untenable. It is true that there was some "scare" buying in the taxable year due to the war and that petitioner's prices were higher. However, petitioner's purchases were apparently made at higher prices, and Bye's duties were more detailed. Petitioner purchased more space and manufacturing facilities and increased its operations. Bye was faced with the necessity of suggesting and developing substitutes for those chemicals which petitioner ordinarily purchased and sold. His activities and responsibilities thus became more numerous. We think that the increase in petitioner's business during the taxable year was principally due to Bye's services. Respondent's determination is therefore reversed. It appears that petitioner will be entitled to a refund. Decision will be entered under Rule 50.